## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KATHERINE WIGGINS,                              :
                                                :
    Plaintiff,                             :
                                                :    CIVIL ACTION NO.
v.                                              :
                                                :    _____
ASTRAZENECA PHARMACEUTICALS LP,                 :
                                                :
ASTRAZENECA LP,                                 :
                                                :
ZENECA, INC.,                                   :
                                                :
JOHNSON & JOHNSON COMPANY,                      :
                                                :
and                                             :
                                                :
JANSSEN PHARMACEUTICA PRODUCTS, LP, :
                                                :
    Defendants.                            :

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendants Johnson & Johnson (erroneously designated as "Johnson & Johnson Company") and Janssen, LP (f/k/a Janssen Pharmaceutica Products, L.P.) ("Janssen") (collectively, "Defendants"), by their undersigned counsel, hereby remove this action from the Superior Court of the State of Delaware in and for New Castle County to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 1446, and as grounds for said removal state as follows:

1.      On or about May 26, 2006, Plaintiff Katherine Wiggins commenced this action in The Superior Court of the State of Delaware in and for New Castle County, by filing a

Complaint bearing case no. 06C-05-296 SER.  A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit 1.

2.      Plaintiff's Complaint avers that she is a resident of the State of Missouri. (Plaintiff's Complaint, ¶ 1).

3.      For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of any state in which it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

4.      As alleged in Plaintiff's Complaint, Defendant Johnson & Johnson is a New Jersey corporation and does business in the State of Delaware.  (Plaintiff's Complaint, ¶ 5).

5.      As alleged in Plaintiff's Complaint, Defendant Janssen is a New Jersey limited partnership.  (Plaintiff's Complaint, ¶ 6).

6.      There is a high probability that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Plaintiff seeks special and compensatory damages in excess of $15,000.00 for "personal injury, permanent physical injury, mental anguish, emotional distress, loss of enjoyment of life and economic loss."  Plaintiff also seeks punitive damages in excess of $15,000.00 (Plaintiff's Complaint at p. 40).  In this later regard, Plaintiff avers that in 2005, with regard to the drug here at issue, Defendant Janssen achieved annual sales of $3.5 million.

7.      Under 28 U.S.C. § 1332, the United States District Courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00 and is between citizens of different states.  For the reasons set forth in paragraphs 2

through 6, the present action is a matter over which this Court has original jurisdiction under 28 U.S.C. § 1332.

8.    Plaintiff has yet to serve <u>any</u> Defendant in this case with a copy of the Summons and Complaint.

9.    Although Defendants Astrazeneca Pharmaceuticals LP, Astrazeneca LP, and Zeneca, Inc. arguably all are resident Delaware defendants, removal is appropriate, as none of them have been served. For this reason, also, consent from these Defendants is unnecessary.

10.    Promptly after the filing of this Notice of Removal with this Court Defendants will file a copy with the Clerk of the Court of the Superior Court for the State of Delaware in and for New Castle County. A copy of the referenced state court notice, excluding exhibits, is attached as Exhibit 2. Defendants also will serve a copy of this Notice upon Plaintiff.

WHEREFORE, Defendant prays that this civil action be removed in its entirety from the Superior Court of the State of Delaware in and for New Castle County to the United States District Court for the District of Delaware for all further proceedings.

Dated:  June 6, 2006

Respectfully submitted,

David P. Primack (DE 4449)
Drinker Biddle & Reath LLP
1100 North Market Street, Suite 1000
Wilmington, DE 19801-1254
Phone:  (302) 467-4200
Fax:     (302) 467-4201

Of Counsel
Kenneth A. Murphy
Drinker Biddle & Reath LLP
18th and Cherry Streets
Philadelphia, PA  19103-6996
Phone: (215) 988-2837
Fax:     (215) 988-2757

**EXHIBIT 1**

EFiled: May 26 2006 5:04
Transaction ID 11387134



IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

KATHERINE WIGGINS,                          :
                                            :
        Plaintiff,                          :
                                            :       C.A. No. 06C-05-$\partial 9 \mathcal{U}$  SER
        v.                                  :
                                            :       JURY TRIAL DEMANDED
ASTRAZENECA PHARMACEUTICALS LP,             :
                                            :
ASTRAZENECA LP,                             :       NON-ARBITRATION
                                            :
ZENECA, INC.,                               :
                                            :
JOHNSON & JOHNSON COMPANY,                  :
                                            :
and                                         :
                                            :
JANSSEN PHARMACEUTICA PRODUCTS,             :
LP,                                         :
                                            :
        Defendants.                         :

## COMPLAINT

Plaintiff Katherine Wiggins sues Defendants AstraZeneca Pharmaceuticals LP,

AstraZeneca LP, Zeneca, Inc., Johnson & Johnson Company, and Janssen Pharmaceutica

Products, LP, jointly and severally, and for her cause of action, states as follows:

1.      Plaintiff Katherine Wiggins is a resident of the State of Missouri.

2.      Defendant AstraZeneca Pharmaceuticals LP, is a Delaware limited partnership,

and all times mentioned herein was doing business in the States of Delaware, Missouri, and

Ohio.

3.      Defendant AstraZeneca LP is a Delaware limited partnership, and all times

mentioned herein was doing business in the States of Delaware, Missouri, and Ohio.

4.      Defendant Zeneca, Inc., is a Delaware corporation, and is doing business in the

States of Delaware, Missouri, and Ohio. Said defendants are hereinafter referred to as "AstraZeneca."

5    Defendant Johnson & Johnson Company (hereinafter "Johnson & Johnson") is a foreign corporation organized and doing business under the laws of the State of New Jersey, and, at all times herein mentioned, was doing business in the States of Delaware, Missouri and Ohio.

6.    Defendant Janssen Pharmaceutica Products, LP, is a foreign corporation organized and doing business under the laws of the State of New Jersey and, at all times herein mentioned, was doing business in the States of Missouri and Ohio. Collectively, Johnson & Johnson and Janssen Pharmaceutica Products, LP, will be referred to collectively as "Janssen.". Plaintiff suffered and continues to suffer from bipolar disorder despite treatment with Pharmaceutical Defendants' drug products Seroquel, and Risperdal.

7.    On or about July 2002, Plaintiff Katherine Wiggins was prescribed and began taking the prescription drug Risperdal (risperidone), manufactured, distributed and/or sold by Defendant Janssen.

8.    On or about January 2003, Plaintiff Katherine Wiggins was prescribed and began taking the prescription drug Seroquel (quetiapine), manufactured, distributed and/or sold by Defendant AstraZeneca.

9.    As a result of the ingestion of Seroquel and/or Risperdal, Plaintiff experienced rapid weight gain and developed elevated liver enzymes, hypercholesteremia, and diabetes mellitus and was permanently injured.

10.    Plaintiff's injury was inherently unknowable and Plaintiff was blamelessly ignorant of the fact that Seroquel and Risperdal can cause diabetes until on or about July 2004, when Plaintiff was diagnosed with diabetes and after the product labels for Seroquel and

2

Risperdal were changed to add a warning regarding diabetes and hyperglycemia and also the need to monitor patients for those conditions. Prior to that time, Plaintiff had no reason to suspect, and could not have learned through the exercise of due diligence, that Seroquel and Risperdal had caused Plaintiff to develop diabetes and that Plaintiff had a cause of action against Defendants, and Defendants fraudulently concealed from Plaintiff, Plaintiff's physician, and other consumers and their physicians, the fact that Seroquel and Risperdal cause diabetes and that patients taking Seroquel and/or Risperdal should be monitored for hyperglycemia and diabetes.

COUNT I

(NEGLIGENCE)

(ASTRAZENECA)

11.    The allegations previously set forth are realleged and reincorporated and incorporated by reference within this count.

12.    From on or about 1997 through today, Defendant AstraZeneca manufactured, created, designed, tested, labeled, sterilized, packaged, licensed, distributed, supplied, marketed, sold, and advertised and placed in the stream of commerce the pharmaceutical drug product "quetiapine fumarate" which was sold in the United States under the trade name "Seroquel."

13.    Defendant AstraZeneca had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of Seroquel, including a duty to assure that Seroquel did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs, and a duty to warn physicians and patients of any serious risks associated with Seroquel.

14.    The prescription drug Seroquel is an antipsychotic medication belonging to a

3

class of drugs referred to as "atypical" or "second-generation" antipsychotics. This class of drugs, including Seroquel, causes an increased risk of rapid weight gain, hyperlipidemia, hypercholesteremia, hyperglycemia, diabetes mellitus, ketoacidosis, seizures, hyperosmolar coma, death, pancreatitis, liver disease, kidney disease, blindness, and other serious side effects including neuroleptic malignant syndrome and tardive dyskinesia, and other serious health problems associated with diabetes, including heart disease, blindness, neuropathy, hyperosmolar coma, seizures, and death.

15.    Seroquel is commonly prescribed to patients to aid in the treatment of schizophrenia and manic episodes associated with bipolar I disorder. The pharmacologic action of these drugs is unknown but is thought to be dependent on their ability to block or moderate the level of dopamine and/or serotonin; chemicals found in the brain that in excessive amounts may possibly cause abnormal thinking and hallucinations.

16.    The anti-psychotic drug market is $12 Billion worldwide.    Defendant AstraZeneca viewed the Seroquel as a blockbuster drug with significant projected growth potential. In 2003, Seroquel reached over $2 Billion in annual sales, and, in 2005, Seroquel reached over $2.8 Billion in annual sales.

17.    The use of this class of drugs, including Seroquel, has been and is associated with an increased risk of rapid weight gain, hyperlipidemia, hypercholesteremia, hyperglycemia, diabetes mellitus, ketoacidosis, seizures, hyperosmolar coma, death, pancreatitis, liver disease, kidney disease, blindness, and other serious side effects including neuroleptic malignant syndrome and tardive dyskinesia.

18.    Seroquel was initially marketed by Defendant AstraZeneca as safe and effective for the treatment of schizophrenia, and later for bipolar mania, promising greater effectiveness

4

and fewer side effects than with other available antipsychotics.

19.    The risk associated with this class of drugs, including Seroquel, and the onset of diabetes is higher than for older, less expensive drugs used to treat schizophrenia.

20.    The product warnings in effect for Seroquel prior to and during the time period that Plaintiff was taking this drug product were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians, as well as consumer patients, of the actual risks associated with this drug.

21.    Despite the fact that Defendant AstraZeneca knew or should have known that Seroquel was associated with hyperglycemia and diabetes mellitus and related conditions, said Defendant recklessly, negligently, and with willful and wanton indifference to the health and safety of consumers, including Plaintiff, failed to include any warning regarding hyperglycemia, diabetes mellitus, or related conditions until on or after January 2004.  Prior to that time, the label was defective in that it failed to advise prescribing doctors or the public, including Plaintiff, of the need to conduct fasting blood sugar test before and during treatment and that treatment should be stopped if symptoms of hyperglycemia or diabetes mellitus appeared.  In fact, the January 2004 label is still defective in that it does not contain a black box warning and only recommends blood glucose testing for patients with "risk factors" and those who develop "symptoms" of hyperglycemia.

22.    The marketing and promotion efforts of Defendant AstraZeneca, through its advertisers and sales force, overstated the benefits of Seroquel and minimized and downplayed the risks associated with this drug.  These promotional efforts were made, while fraudulently, willfully and wantonly withholding important safety information from the physicians, the FDA, and the public, specifically, that Defendant AstraZeneca was aware of numerous reports of

5

diabetes associated with the use of these drugs, well beyond the background rate and well beyond the rate for other anti-psychotic agents.

23. After Seroquel was introduced to the U.S. market, studies conducted in Europe and Japan revealed that numerous patients treated with atypical antipsychotics, including Seroquel, experienced a significantly higher incidence of severe and permanent diseases and conditions, including diabetes and hyperglycemia.

24. Shortly after Defendant AstraZeneca began selling Seroquel, reports of consumers who were using Seroquel suffering from hyperglycemia, acute weight gain, diabetes mellitus, pancreatitis, and other severe diseases and conditions associated began to surface. Defendant AstraZeneca knew, or were reckless in not knowing, of these reports. Furthermore, Defendant AstraZeneca was aware of studies and journal articles linking use of Seroquel with these and other severe and permanent hyperglycemia-related adverse events and diseases prior to and during the time that Plaintiff ingested Seroquel

25. In December 2000, an article published in the *British Medical Journal* found no clear evidence that Risperdal or other atypical anti-psychotics like Seroquel and Risperdal were more effective or better tolerated than conventional anti-psychotics including Haldol and Thorazine.

26. By July 2001, Defendant AstraZeneca had received at least 46 reports of diabetes mellitus in patients taking Seroquel, including reports in the medical literature, and including at least 21 cases of ketoacidosis or acidosis and 11 deaths, and, by the end of 2003, AstraZeneca had received at least 23 more. Most cases appeared within 6 months of initiating Seroquel therapy.

27. A study of diabetes mellitus with use of atypical neuroleptics in the treatment of

6

schizophrenia, published in 2002, found that the prevalence of diabetes in a large national sample was significantly increased for patients who received clozapine, olanzapine, and quetiapine.

28.    In a published restrospective case-controlled cohort study of diabetes mellitus and antipsychotic treatment in the United States, when researchers compared the hazard for those receiving quetiapine to the hazard with respect to the general population, the researchers found the hazard ratio to be nearly double the risk for controls.

29.    In a study presented at an international conference, researchers reported that patients taking Seroquel had 3.34 times as many cases of diabetes as those taking older antipsychotic drugs.

30.    Recently researchers at the National Institute of Mental Health published a report on atypical antipsychotics including Seroquel which found that the majority of patients in each group discontinued their assigned treatment owing to inefficacy or intolerable side effects or for other reasons and that the atypicals, including Seroquel, were no more effective than the older, cheaper, and still available typical antipsychotic Haldol.

31.    Upon information and belief, prior to and during the time Plaintiff ingested Seroquel, the Japanese label for Seroquel provided a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informed physicians regarding the necessity of medical monitoring of patients on Seroquel. At the time the Plaintiff ingested Seroquel, Defendant AstraZeneca had not adopted this safer, more accurate label for the U.S. distribution of Seroquel.

32.    Upon information and belief, prior to and during the time of use of Seroquel by Plaintiff, the Japanese label warned specifically of the diabetes risk, prominently in the beginning of the package label stating.

7

a.   Quetiapine fumarate is contraindicated for use in patients with diabetes or a history of diabetes.

b.   Quetiapine fumarate should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes.

c.   Patients receiving quetiapine fumarate should be carefully monitored for symptoms of hyperglycemia, and the drug should be discontinued if such symptoms occur. The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination.

d.   Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with quetiapine fumarate and how to identify the symptoms of hyperglycemia

33.   In April 2002, the Japanese Health & Welfare Ministry issued emergency safety information regarding the risk of diabetes, diabetic ketoacidosis, and hyperosmolar coma for patients prescribed Seroquel. On information and belief, prior to that time, Defendant AstraZeneca was involved in discussions with the Japanese agency regarding labeling changes for Seroquel and other atypicals.

34.   While warning of the association of Seroquel with diabetes, glucose dysregulation, ketoacidosis, weight gain and the need for medical monitoring in Japan, Defendant AstraZeneca failed to provide the same or similar warnings to the public and prescribing physicians in the United States.

35.   In April 2002, the British Medicines Control Agency warned about the risk of diabetes for patients prescribed the atypical antipsychotic Zyprexa in its newsletter *Current*

8

*Problems in Pharmaco-vigilance.* This newsletter reported forty (40) reports of diabetes, hyperglycemia, diabetic ketoacidosis, diabetic coma, and one death among users of Zyprexa. Subsequently, the British government required Lilly to warn consumers about the risk of diabetes and diabetic ketoacidosis, and further required Lilly to instruct patients who were using Zyprexa to monitor their blood sugar levels. Defendant AstraZeneca knew or should have known that these dangerous side effects were common to all drugs of the class known as atypical antipsychotics.

36. Defendant AstraZeneca was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Seroquel in that, among other things, Defendant AstraZeneca:

      a.    Failed to accompany the product with proper warnings regarding the serious adverse side effects, including diabetes mellitus, ketoacidosis, hyperosmolar coma, death, hyperglycemia, weight gain, and glucose dysregulation associated with the use of Seroquel;

      b.    Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the drugs;

      c.    Failed to provide adequate training and instruction to medical care providers for appropriate use of Seroquel;

      d.    Failed to adequately warn Plaintiff prior to actively encouraging the sale of Seroquel, either directly or indirectly (through the prescribing physician), orally or in writing, about the following:

            i. The need to take a complete medical history of the patient prior to ingesting Seroquel;

9

           ii.  the need for a battery of diagnostic tests to be performed on the patient prior to ingesting Seroquel to discover and ensure against potentially fatal side effects; and

           iii.  the need for comprehensive, regular medical monitoring to ensure early discovery of hyperglycemia, diabetes, and potentially fatal side effects;

e.      Failed to adequately warn that the risks associated with the ingestion of Seroquel exceeded the risks of other comparable forms of medication for schizophrenia or bipolar mania;

f.      Failed to adequately warn about the increased danger and potentially fatal relationship in combining use of Seroquel with various other drugs or use with certain identifiable disorders;

g.      Exaggerated the benefits and downplayed the risks of Seroquel in a deceptive manner and in a manner lacking fair balance;

h.      Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of Seroquel from prescribing physicians and the consuming public, and, had prescribing physicians and the consuming public known of such facts, the drugs would never have been prescribed to, or used by, Plaintiff;

i.      Remained silent despite their knowledge of the growing acceptance by the public and physicians of misinformation and misrepresentations regarding both the safety and efficacy of atypical antipsychotics in general and Seroquel in particular, , and did so because the prospect of huge profits outweighed health and

10

safety issues, all to the significant detriment of Plaintiff;

j.      Failed to perform their post-manufacturing and continuing duty to warn which arose when they knew, or with reasonable certainty should have known, that Seroquel was being prescribed in a fatal or injurious combination or manner of for uses for which there were no adequate studies as to safety and efficacy and for which the drug product was not approved;

k.      Despite the fact that Defendant AstraZeneca received numerous reports of rapid weight gain, hyperglycemia, diabetes, ketoacidosis, hyperosmolar coma, death, neuroleptic malignant syndrome, tardive dyskinesia, and other serous adverse events, for Seroquel and other atypical antipsychotic drugs of this class via the spontaneous reporting system and the medical literature prior to and during the time that Plaintiff was ingesting Seroquel, such that AstraZeneca knew or should have known that a reasonable association existed between Seroquel and said serious adverse events, nonetheless, Defendant AstraZeneca continued to market the drugs to physicians and consumers, including Plaintiff, without disclosing these adverse events and despite the fact that there were safer alternative methods of treating schizophrenia and bipolar mania; and

l.      Defendant AstraZeneca, through its marketing department, sales managers, and field sales force, promoted Seroquel for uses beyond its approved indications, offering incentives to doctors to increase prescriptions in order to capture a larger share of the anti-psychotic market.

m.      Failed to use reasonable care in the selection, hiring, training and supervision of its employees and agents engaged in marketing, promotion,

11

distribution, and sale of Seroquel;

n.     Violated the laws and regulations regarding the labeling, distribution, sale, marketing, and promotion of Seroquel; and

o.     Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for the rights of Plaintiff.

37.     Defendant AstraZeneca knew or should have known that physicians and patients, such as Plaintiff would rely on the labeling for Seroquel and would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

38.     The aforesaid negligent acts by Defendant AstraZeneca fell below the standard of care of a reasonably prudent pharmaceutical drug manufacturer or distributor.

39.     As a direct and proximate result of said acts by Defendant AstraZeneca, Plaintiff has suffered injuries and damages as described below.

40.     Plaintiff suffered and will continue to suffer in the future from:

a.     serious permanent physical injuries, including diabetes mellitus, liver disease, and high cholesterol;

b.     pain and mental anguish;

c.     loss of enjoyment of life;

d.     complications of diabetes such as heart disease, kidney disease, diabetic neuropathy, digestive problems, bladder problems, loss of vision, damage to blood vessels, high cholesterol, difficulty in healing sores, amputation of feet and limbs, stroke, and death;

e.     medical attention and care and medical expenses; and

f.     loss of earnings and/or earning capacity, assistance with the activities of daily

12

living, and other financial expenses.

41.    Defendant AstraZeneca's conduct was willful, wanton, and done with intentional or reckless indifference to the rights of Plaintiff and to the public health and safety and the health and safety of Plaintiff and other consumers that Plaintiff is entitled to an award of punitive damages against Defendant AstraZeneca.

## COUNT II

## (FRAUD)

## (ASTRAZENECA)

42.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

43.    Defendant AstraZeneca knew or should have known that Seroquel was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed, and was otherwise not as represented, as previously alleged.

44.    Despite the fact that Defendant AstraZeneca was under a duty to disclose this information to Plaintiff's physician and to Plaintiff, Defendant knowingly, and with intent to deceive and defraud consumers including Plaintiff, made misrepresentations and partial disclosures concerning the nature and quality of Seroquel which Defendant had a duty to correct because Defendant was in a superior position to know the true state of the facts about the dangerous and defective nature of Seroquel and its known risks to physicians and Plaintiff. These deliberate and/or intentional misrepresentations and omissions of material facts include but are not limited to:

    a.    Stating orally, in product labeling, and in marketing and promotional materials that Seroquel was safe and effective for the treatment of schizophrenia and bipolar

13

mania, which was false and not supported by adequate studies;

b. Stating orally, in product labeling, and in marketing and promotional materials that Seroquel was safer and more effective for the treatment of schizophrenia and bipolar mania than other available drug products which were less expensive, which was false and not supported by adequate studies;

c. Advising physicians through sales and marketing personnel that Seroquel was safe and effective for the treatment of conditions and symptoms for which it was not approved and for which there were not adequate studies of safety and efficacy;

d. Suppressing, failing to disclose and mischaracterizing the known risks of rapid weight gain, hyperglycemia, hyperlipidemia, hypercholesterolemia, diabetes mellitus, diabetic ketoacidosis, hyperosmolar coma, death, neuroleptic malignant syndrome, and tardive dyskinesia due to ingestion of Seroquel, which were known to Defendant AstraZeneca spontaneous reports and studies published in the medical literature;

e. Suppressing, failing to disclose and mischaracterizing the known risks of rapid weight gain, hyperglycemia, hyperlipidemia, hypercholesterolemia, diabetes mellitus, diabetic ketoacidosis, hyperosmolar coma, death, neuroleptic malignant syndrome, and tardive dyskinesia due to ingestion of Seroquel, as known to Defendant through spontaneous reports and studies published in the medical literature;

f. Concealing the fact that Seroquel was required by the responsible Japanese regulatory agency to carry a warning of the risk of hyperglycemia and diabetes

14

and that patients should be monitored for these conditions and the drug stopped if signs or symptoms appeared;

g. Omitting material information showing that Seroquel was no more effective than other anti-psychotic drugs already available on the market;

h. Failing to timely and fully disclose the complete and actual results of all clinical tests and studies related to Seroquel;

i. Failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

j. Downplaying or even denying to practitioners, both orally and in written promotional materials, that Seroquel and other drugs in this class can and do cause rapid weight gain, hyperglycemia, diabetes, and complications and death therefrom, contrary to information placed in the product labeling at the direction of the FDA;

k. Failing to advise prescribers and consumers of the need to take a complete medical history prior to prescribing or using Seroquel and to monitor patients for blood sugar levels from labeling and promotional materials;

l. Failing to disclose that clinical pre-marketing studies were with such limited numbers of patients, in limited populations, for short periods of use of only a few weeks, or with lower doses of these drugs that the drugs had not been adequately tested for safety and efficacy in children, the elderly, patients with pre-existing medical conditions, or in conjunction with other medications; and then encouraging use for patients in those populations or, knowing that the drugs were being used in that way, failing to warn practitioners of the risks of doing so;

15

m. Failing to disclose that the drop-out rate with patients on Seroquel was among the highest of any antipsychotic medication, an indication of lack of effectiveness or intolerability or both;

n. Failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

o. Making these misrepresentations concerning the safety, efficacy and benefits of Seroquel as detailed in this Complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading; and

p. Failing to include the aforesaid information in "Dear Doctor" or "Dear Healthcare Provider" letters and other correspondence with practitioners;

q. Failing to include the aforesaid information in marketing and promotional materials given or shown to practitioners; and

r. Failing to include the aforesaid information in the product labeling or package inserts.

45      Neither Plaintiff nor her doctors knew or could have learned, the material facts and important information Defendant AstraZeneca omitted and suppressed.  The facts and information suppressed and concealed by Defendant AstraZeneca were material, and of such a nature that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in the decision of Plaintiff's physician to prescribe, and of Plaintiff to take, Seroquel.

46.      Defendant AstraZeneca knew or should have known that Plaintiff's physician and Plaintiff were relying on Defendant's fraudulent misrepresentations and omissions of material facts.

16

47. As a direct and proximate result of Defendant AstraZeneca's' fraud, suppression, and omission of material facts, Plaintiff acted to Plaintiff's detriment in purchasing and ingesting Seroquel, which Plaintiff would not have purchased or ingested had Plaintiff been told the truth, and should be reimbursed what Plaintiff spent.

48. As a direct and proximate result of said acts by Defendant AstraZeneca, Plaintiff has suffered injuries and damages as described herein.

## COUNT III

## STRICT PRODUCT LIABILITY (FAILURE TO WARN)

## (ASTRAZENECA)

49. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

50. The Seroquel manufactured and/or supplied by Defendant AstraZeneca was and is unaccompanied by proper warnings regarding all known adverse side effects and the comparative severity and duration of such adverse effects. The warnings given did not and do not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects.

51. Defendant AstraZeneca failed to perform adequate testing in that adequate testing would have shown that Seroquel possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of the drugs. Had the testing been adequately performed, Seroquel would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drugs.

17

52.    As a direct and proximate result of the failure of Defendant AstraZeneca to conduct adequate testing and to furnish an adequate warning to physicians and consumers including Plaintiff and Plaintiff's doctors, the Seroquel manufactured and/or distributed and/or supplied by Defendant AstraZeneca, at the time it left Defendant's hands, was unreasonably dangerous and defective.

53.    Despite this defect, Defendant AstraZeneca continued to aggressively promote Seroquel to physicians and consumers, including Plaintiff.

54.    As a direct and proximate result of the defective condition of Seroquel, as manufactured and/or supplied and/or distributed by Defendant AstraZeneca, Plaintiff has suffered injuries and damages as described herein.

## COUNT IV

### STRICT PRODUCT LIABILITY

### (PURSUANT TO RESTATEMENT SECOND OF TORTS 402A (1965))

### (ASTRAZENECA)

55.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

56.    The Seroquel manufactured and/or distributed and/or supplied by Defendant AstraZeneca was defective in design or formulation in that when it left the hands of the manufacturers and/or suppliers and/or distributors, and was not altered prior to use, the foreseeable risks exceeded the benefits associated with the design or formulation.

18

57.    Alternatively, the Seroquel manufactured and/or distributed and/or supplied by Defendant AstraZeneca was defective in design or formulation in that, when said drug product left the hands of the manufacturer and/or suppliers and/or distributors, it was unreasonably dangerous, was more dangerous than an ordinary consumer would expect, and was more dangerous than other anti-psychotic drugs available at that time.

58.    There existed, at all times material hereto, safer alternative medications.

59.    As a direct and proximate result of the defective condition of Seroquel, Plaintiff has suffered injuries and damages as described herein.

## COUNT V

## BREACH OF EXPRESS WARRANTY

### (ASTRAZENECA)

60.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

61.    Defendant AstraZeneca expressly warranted that Seroquel was safe and effective for the treatment of schizophrenia and bipolar mania, based on adequate clinical studies.

62.    Seroquel failed to conform to these express representations because the drug is not safe and/or possesses a high risk of serious, life-threatening side effects, including those suffered by Plaintiff.

63.    As a direct and proximate result of said breach of warranty, Plaintiff has suffered injuries and damages as described herein.

19

## COUNT VI

## BREACH OF IMPLIED WARRANTY

## (ASTRAZENECA)

64.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

65.    At the time Defendant AstraZeneca marketed, sold and distributed Seroquel for use by Plaintiff and other consumers, said Defendant knew of the use for which Seroquel was intended and impliedly warranted Seroquel to be of merchantable quality and safe and fit for such use.

66.    Plaintiff and her physician reasonably relied upon the skill and judgment of said Defendant as to whether Seroquel was of merchantable quality and safe and fit for its intended use.

67.    Contrary to such implied warranties, Seroquel was not of merchantable quality or safe or fit for its intended use because Seroquel was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

68.    As a direct and proximate result of said breach of warranty, Plaintiff has suffered injuries and damages as described herein.

## COUNT VII

## CONCEALMENT, SUPPRESSION, OR OMISSION OF MATERIAL FACTS

## (ASTRAZENECA)

69.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

20

70.    Defendant AstraZeneca had a post-manufacturing and continuing duty to warn, which arose when they knew, or with reasonable care should have known, that adverse events associated with Seroquel were serious and sometimes fatal.

71.    Defendant AstraZeneca knew or should have known (or would have known had appropriate testing and/or safety monitoring been done) that use of Seroquel caused serious and potentially life-threatening side effects of diabetes.

72.    Defendant AstraZeneca omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Seroquel, including but not limited to the risks of diabetes mellitus and other injuries.  Further, said Defendant purposely downplayed and understated the serious nature of the risks associated with Seroquel use in order to increase the sales of the drug product.

73.    Defendant AstraZeneca falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality that Seroquel would never have been approved and no reasonable physician would have prescribed Seroquel to Plaintiff if they had known about the concealed facts.

74.    Defendant AstraZeneca engaged in calculated silence, despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of the use of Seroquel, and did so because the prospect of significant future profits caused them to ignore concerns regarding health and safety issues, all to the significant detriment of the public, including the Plaintiff.

75.    Safer and less expensive anti-psychotics were available to patients being treated with Seroquel.

21

76.    Defendant AstraZeneca's actions, as set forth herein, constitute knowing omission, suppression or concealment of material facts, made with the knowledge and intent that doctors and their patients, including Plaintiff, would rely upon such concealment, suppression or omission in connection with the prescribing and use of Seroquel.

77.    In fact, Plaintiff, directly and/or through Plaintiff's prescribing physician, was induced by the Defendant AstraZeneca's omission, suppression and concealment to use Seroquel.

78.    As a direct and proximate result of the conduct of Defendant AstraZeneca as described herein, the Plaintiff has suffered injuries and damages as described herein.

## COUNT VIII

## NEGLIGENCE

## (JANSSEN)

79.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 10 above as if fully set forth herein.

80.    Defendant Janssen designed, obtained, licensed, manufactured, tested, promoted, marketed, developed and placed in the stream of commerce the pharmaceutical product "risperidone" which was sold in the United States under the trade name Risperdal (hereinafter referred to as "Risperdal").

81.    From on or about 1994 through today, Defendant Janssen manufactured, created, designed, tested, labeled, sterilized, packaged, licensed, distributed, supplied, marketed, sold, and advertised Risperdal and, by said activities, caused Risperdal to be placed into the stream of commerce throughout the United States, including Delaware.

82.    The prescription drug Risperdal is an "anti-psychotic" medication belonging to a

22

class of drugs referred to as "atypical" or "second-generation" anti-psychotics. This class of drugs, including Risperdal, causes serious and sometimes fatal injuries to the liver, kidneys, and pancreas. Adverse effects include, but are not limited to, neuroleptic malignant syndrome, tardive dyskinesia, weight gain, ketoacidosis, pancreatitis, diabetes mellitus, hyperglycemia, and other serious health problems associated with diabetes, including heart disease, blindness, neuropathy, hyperosmolar coma, seizures, and death.

83.    The product warnings in effect for Risperdal prior to and during the time period that Plaintiff was taking this drug product were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians, as well as consumer patients, of the actual risks associated with this drug.

84.    Risperdal is commonly prescribed to patients to aid in the treatment of schizophrenia and manic or mixed episodes associated with bipolar 1 disorder. The pharmacologic action of these drugs is unknown but is thought to be dependent on their ability to block or moderate the level of dopamine and/or serotonin; chemicals found in the brain that in excessive amounts may possibly cause abnormal thinking and hallucinations.

85.    The anti-psychotic drug market is $12 Billion worldwide. Defendant Janssen viewed Risperdal as a blockbuster product with significant projected growth potential. In 2002, Risperdal reached over $2 Billion in annual sales, and in 2005, reached $3.5 Billion.

86.    The use of this class of drugs, including Risperdal, has been associated with an increased risk of rapid weight gain, hyperlipidemia, hypercholesteremia, hyperglycemia, diabetes mellitus, ketoacidosis, seizures, hyperosmolar coma, death, pancreatitis, liver disease, kidney disease, blindness, and other serious side effects including neuroleptic malignant syndrome and tardive dyskinesia,.

23

87.    The risk associated with this class of drugs, including Risperdal, and the onset of diabetes and related conditions is higher than for older, less expensive drugs used to treat schizophrenia.

88.    Risperdal was initially marketed by Defendant Janssen as safe and effective for the treatment of schizophrenia, and later for bipolar mania, promising greater effectiveness and fewer side effects than with other available antipsychotics.

89.    Defendant Janssen, through its marketing department, sales managers, and field sales force, promoted Risperdal for uses beyond its approved indications, offering incentives to doctors to increase prescriptions in order to capture a larger share of the anti-psychotic market.

90.    The marketing and promotion efforts of Defendant Janssen, through its advertisers and sales force, overstated the benefits of Risperdal and minimized and downplayed the risks associated with this drug. These promotional efforts were made, while fraudulently, willfully and wantonly withholding important safety information from the physicians, the FDA, and the public, specifically that Defendant Janssen was aware of numerous reports of diabetes and related conditions associated with the use of these drugs, well beyond the background rate and well beyond the rate for other anti-psychotic agents.

91.    In December 2000, an article published in the *British Medical Journal* found no clear evidence that Risperdal or other atypical anti-psychotics like Seroquel and Risperdal were more effective or better tolerated than conventional anti-psychotics including Haldol and Thorazine.

92.    In November 2003, an article published in the *Journal of the American Medical Association* compared Zyprexa with a typical antipsychotic and found "no statistically or significant advantages" of Risperdal for treatment of schizophrenia. The authors did note a significant difference among the costs of typical antipsychotics and Zyprexa per tablet: $0.02 versus $4.84 respectively

93.    Shortly after Defendant Janssen began selling Risperdal, reports of consumers who were using Risperdal suffering from hyperglycemia, acute weight gain, diabetes mellitus, pancreatitis, and other severe diseases and conditions associated began to surface. Defendant Janssen knew, or were reckless in not knowing, of these reports. Furthermore, Defendant Janssen was aware of studies and journal articles linking use of Risperdal with these and other severe and permanent hyperglycemia-related adverse events and diseases prior to and during the time that Plaintiff ingested Risperdal.

94.    Since its introduction to the market, the FDA has received numerous reports of hyperglycemia, diabetes mellitus, worsening of existing diabetes, pancreatitis, and other severe injuries among patients, including children, who were prescribed Risperdal.

95.    Prior to and during the time that Plaintiff ingested Risperdal, scientific journals published studies that established a causal association between atypical antipsychotics including Risperdal and new-onset or aggravation of diabetes mellitus (hereinafter "diabetes"), hyperglycemia, glucose dysregulation, ketoacidosis, and weight gain.

96.    On information and belief, in April 2002, the Japanese Health & Welfare Ministry issued emergency safety information regarding the risk of diabetes, diabetes ketoacidosis, and diabetic coma for patients prescribed atypical antipsychotics including Risperdal.

97.    Prior to November 2003, the Risperdal label contained no warnings regarding

25

diabetes mellitus or hyperglycemia.  The only place in the label that diabetes mellitus was mentioned was under "other events" and metabolic and nutritional disorders," and no indication of the true severity or frequency of diabetes mellitus or hyperglycemia or the need for blood glucose monitoring was mentioned.

98.    Despite the fact that Defendant Janssen knew or should have known that Risperdal was associated with hyperglycemia and diabetes mellitus and related conditions, said Defendant recklessly, negligently, and with willful and wanton indifference to the health and safety of consumers, including Plaintiff, failed to include any warning regarding hyperglycemia, diabetes mellitus, or related conditions until on or after November 2003.  Prior to that time, the label was defective in that it failed to advise prescribing doctors or the public, including Plaintiff, of the need to conduct fasting blood sugar test before and during treatment and that treatment should be stopped if symptoms of hyperglycemia or diabetes mellitus appeared.  In fact, the Risperdal label is still defective in that it does not contain a black box warning and only recommends blood glucose testing for patients with "risk factors" and those who develop "symptoms" of hyperglycemia.

99.    Defendant Janssen had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of Risperdal, including a duty to assure that Risperdal did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs, and a duty to warn physicians and patients of any serious risks associated with Risperdal.

100.    Defendant Janssen was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Risperdal in that, among other things, Defendant Janssen:

26

a. Failed to accompany the product with proper warnings regarding the serious adverse side effects, including diabetes mellitus, ketoacidosis, hyperosmolar coma, death, hyperglycemia, weight gain, and glucose dysregulation associated with the use of Risperdal;

b. Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Risperdal;

c. Failed to provide adequate training and instruction to medical care providers for appropriate use of Risperdal;

d. Failed to adequately warn Plaintiff prior to actively encouraging the sale of Risperdal, either directly or indirectly (through the prescribing physician), orally or in writing, about the following:

    i. the need to take a complete medical history of the patient prior to ingesting Risperdal;

    ii. the need for a battery of diagnostic tests to be performed on the patient prior to ingesting Risperdal to discover and ensure against potentially fatal side effects; or

    iii. the need for comprehensive, regular medical monitoring to ensure early discovery of hyperglycemia, diabetes, and potentially fatal side effects;

e. Failed to adequately warn that the risks associated with the ingestion of Risperdal exceeded the risks of other comparable forms of medication for schizophrenia or bipolar mania;

27

f.     Failed to adequately warn about the increased danger and potentially fatal relationship in combining use of Risperdal with various other drugs or use with certain identifiable disorders;

g.     Exaggerated the benefits and downplayed the risks of Risperdal in a deceptive manner and in a manner lacking fair balance;

h.     Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of Risperdal from prescribing physicians and the consuming public, and that had prescribing physicians and the consuming public known of such facts, the drugs would never have been prescribed to, or used by, Plaintiff;

i.     Remained silent despite their knowledge of the growing acceptance by the public and physicians of misinformation and misrepresentations regarding both the safety and efficacy of the ingestion of Risperdal, and did so because the prospect of huge profits outweighed health and safety issues, all to the significant detriment of Plaintiff;

j.     Failed to perform their post-manufacturing and continuing duty to warn which arose when they knew, or with reasonable certainty should have known, that Risperdal was being prescribed in a fatal or injurious combination or manner of for uses for which there were no adequate studies as to safety and efficacy and for which the drug product was not approved;

28

k.    Despite the fact that Defendant Janssen received numerous reports of rapid weight gain, hyperglycemia, diabetes, ketoacidosis, hyperosmolar coma, death, neuroleptic malignant syndrome, tardive dyskinesia, and other serous adverse events, for Risperdal and other atypical antipsychotic drugs of this class via the spontaneous reporting system and the medical literature prior to and during the time that Plaintiff was ingesting Risperdal, such that Defendant Janssen knew or should have known that a reasonable association existed between Risperdal and said serious adverse events, nonetheless, Defendant Janssen continued to market Risperdal to physicians and consumers, including Plaintiff, without disclosing these adverse events and despite the fact that there were safer alternative methods of treating schizophrenia and bipolar mania;

l.    Failed to use reasonable care in the selection, hiring, training and supervision of its employees and agents engaged in marketing, promotion, distribution, and sale of Risperdal;

m.    Violated the laws and regulations regarding the labeling, distribution, sale, marketing, and promotion of Risperdal; and

n.    Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for the rights of Plaintiff.

101.    Defendant Janssen knew or should have known that physicians and patients, such as Plaintiff would rely on the labeling for Risperdal and would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

29

102.    The aforesaid negligent acts by Defendant Janssen fell below the standard of care of a reasonably prudent pharmaceutical drug manufacturer or distributor.

103.    As a direct and proximate result of said acts by Defendant AstraZeneca, Plaintiff has suffered injuries and damages as described below.

104.    Plaintiff suffered and will continue to suffer in the future from:

    a.  serious permanent physical injuries, including diabetes mellitus, liver disease, and high cholesterol;

    b.  pain and mental anguish;

    c.  loss of enjoyment of life;

    d.  complications of diabetes such as heart disease, kidney disease, diabetic neuropathy, digestive problems, bladder problems, loss of vision, damage to blood vessels, high cholesterol, difficulty in healing sores, amputation of feet and limbs, stroke, and death;

    e.  medical attention and care and medical expenses; and

    f.  loss of earnings and/or earning capacity, assistance with the activities of daily living, and other financial expenses.

### COUNT IX

### FRAUD

### (JANSSEN)

105.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 10 and Count VIII above as if fully set forth herein.

30

106.   Defendant Janssen knew or should have known that Risperdal was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed, and was otherwise not as represented, as previously alleged.

107.   Despite the fact that Defendant Janssen was under a duty to disclose this information to Plaintiff's physician and to Plaintiff, said Defendant knowingly, and with intent to deceive and defraud consumers including Plaintiff, made misrepresentations and partial disclosures concerning the nature and quality of Risperdal which Defendant had a duty to correct because Defendant was in a superior position to know the true state of the facts about the dangerous and defective nature of Risperdal and its known risks to physicians and Plaintiff. These deliberate and/or intentional misrepresentations and omissions of material facts include, but are not limited to:

a.   Stating orally, in product labeling, and in marketing and promotional materials that Risperdal was safe and effective for the treatment of schizophrenia and bipolar mania, which was false and not supported by adequate studies;

b.   Stating orally, in product labeling, and in marketing and promotional materials that Risperdal was safer and more effective for the treatment of schizophrenia and bipolar mania than other available drug products which were less expensive, which was false and not supported by adequate studies;

31

c.      Advising physicians through sales and marketing personnel that Risperdal
        was safe and effective for the treatment of conditions and symptoms for
        which it was not approved, which was false and not supported by adequate
        studies;

d.      Suppressing, failing to disclose and mischaracterizing the known risks of
        rapid weight gain, hyperglycemia, hyperlipidemia, hypercholesterolemia,
        diabetes mellitus, diabetic ketoacidosis, hyperosmolar coma, death,
        neuroleptic malignant syndrome, and tardive dyskinesia due to ingestion
        of Risperdal, as known to Defendant through spontaneous reports;

e.      Suppressing, failing to disclose and mischaracterizing the known risks of
        rapid weight gain, hyperglycemia, hyperlipidemia, hypercholesterolemia,
        diabetes mellitus, diabetic ketoacidosis, hyperosmolar coma, death,
        neuroleptic malignant syndrome, and tardive dyskinesia due to ingestion
        of Risperdal, as known to Defendant through reports and studies published
        in the medical literature;

f.      ON information and belief, concealing the fact that Risperdal was required
        by the responsible Japanese regulatory agency to carry a warning of the
        risk of hyperglycemia and diabetes and that patients should be monitored
        for these conditions and the drug stopped if signs or symptoms appeared;

g.      Omitting material information showing that Risperdal was no more
        effective than other anti-psychotic drugs already available on the market;

h.      Failing to timely and fully disclose the complete and actual results of all
        clinical tests and studies related to Risperdal;

32

i.      Failing to include the aforesaid information in the product labeling or package inserts;

j.      Failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

k.      Downplaying or even denying to practitioners, both orally and in written promotional materials, that Risperdal and other drugs in this class can and do cause rapid weight gain, hyperglycemia, diabetes, and complications and death therefrom, even after Defendant included such information in the product labeling at the direction of the FDA;

l.      Failing to advise prescribers and consumers of the need to take a complete medical history prior to prescribing or using Risperdal and to monitor patients for blood sugar levels from labeling and promotional materials;

m.      Failing to disclose that clinical pre-marketing studies were with such limited numbers of patients, in limited populations, for short periods of use of only a few weeks, or with lower doses of Risperdal that Risperdal had not been adequately tested for safety and efficacy in children, the elderly, patients with pre-existing medical conditions, or in conjunction with other medications; and then encouraging use for patients in those populations or, knowing that the drugs were being used in that way, failing to warn practitioners of the risks of doing so;

n.      Failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

33

o.    Failing to include the aforesaid information in "Dear Doctor" or "Dear Healthcare Provider" letters and other correspondence with practitioners;

p.    Failing to include the aforesaid information in marketing and promotional materials given or shown to practitioners; and

q.    Making these misrepresentations concerning the safety, efficacy and benefits of Risperdal as detailed in this Complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading.

108.    Plaintiff did not know, and could not learn, the material facts and important information Defendant Janssen omitted and suppressed. The facts and information suppressed and concealed by Defendant Janssen were material and of such a nature that it can be reasonably presumed that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in the decision of Plaintiff's physician to prescribe, and of Plaintiff to take, Risperdal.

109.    Defendant knew or should have known that Plaintiff's physician and Plaintiff were relying on Defendant's fraudulent misrepresentations and omissions of material facts.

110.    As a result of Defendant Janssen's fraud, suppression and omission of material facts, Plaintiff acted to Plaintiff's detriment in purchasing and ingesting Risperdal, which Plaintiff would not have purchased or ingested had Plaintiff been told the truth, and should be reimbursed what Plaintiff spent.

111.    As a direct and proximate result of said acts by Defendant Janssen, Plaintiff has suffered injuries and damages as described herein.

34

## COUNT X

### STRICT LIABILITY (FAILURE TO WARN)

### (JANSSEN)

112.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 10 and Counts VIII through IX above as if fully set forth herein.

113.    The Risperdal manufactured and/or supplied by Defendant Janssen was and is unaccompanied by proper warnings regarding all known adverse side-effects and the comparative severity and duration of such adverse effects. The warnings given did not and do not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects. Said Defendant failed to perform adequate testing in that adequate testing would have shown that Risperdal possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of the drugs. Had the testing been adequately performed, Risperdal would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drugs.

114.    The Risperdal manufactured and/or distributed and/or supplied by Defendant Janssen was defective due to inadequate post-marketing warning or instruction at the time it left said Defendant's hands and was not altered prior to use, because said Defendant failed to provide adequate warnings to physicians or consumers of the drugs and continued to aggressively promote Risperdal without proper warnings.

115.    As a result of the foregoing, Risperdal was defective and unreasonably dangerous.

116.    As a direct and proximate result of the defective condition of Risperdal, as manufactured and/or supplied and/or distributed by Defendant Janssen, and as a direct and

35

proximate result of the negligence, carelessness, other wrongdoing and action(s) of said Defendant described herein, the Plaintiff has suffered injuries and damages as described herein.

## COUNT XI

## STRICT PRODUCT LIABILITY (PURSUANT TO RESTATEMENT SECOND OF TORTS 402A (1965))

### (JANSSEN)

117.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 10 and Counts VIII through X above as if fully set forth herein.

118.    The Risperdal manufactured and/or distributed and/or supplied by Defendant Janssen was defective in design or formulation in that when it left the hands of the manufacturers and/or suppliers and/or distributors and was not altered prior to use, the foreseeable risks exceeded the benefits associated with the design or formulation of the product.

119.    Alternatively, the Risperdal manufactured and/or distributed and/or supplied by Defendant Janssen was defective in design or formulation in that when said drug product left the hands of the manufacturer and/or suppliers and/or distributors, it was unreasonably dangerous, was more dangerous than an ordinary consumer would expect, and was more dangerous than other anti-psychotic drugs available at that time.

120.    There existed, at all times material hereto, safer alternative medications.

121.    Defendant Janssen did not perform adequate testing on Risperdal. Adequate testing would have shown that Risperdal caused serious adverse effects, including diabetes, with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity, and need to monitor, should have been made.

122.    As a direct and proximate result of the defective condition of Risperdal, Plaintiff has suffered injuries and damages as described herein.

36

## COUNT XII

## BREACH OF EXPRESS WARRANTY

## (JANSSEN)

123.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 10 and Counts VIII through XI above as if fully set forth herein.

124.    Defendant Janssen expressly warranted, in product labeling and promotional materials, that Risperdal was safe and effective for the treatment of schizophrenia and bipolar mania, based on adequate clinical studies.

125    Defendant Janssen failed to conform to these express representations because Risperdal is not safe and/or possesses a high risk of serious, life-threatening side effects, including diabetes.

126.    As a direct and proximate result of said breach of warranty, Plaintiff has suffered injuries and damages as described herein.

## COUNT XIII

## BREACH OF IMPLIED WARRANTY

## (JANSSEN)

127.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 10 and Counts VIII through XII above as if fully set forth herein.

128.    At the time Defendant Janssen marketed, sold, and distributed Risperdal for use by Plaintiff and other  consumers, said Defendant knew of the use for which Risperdal was intended and impliedly warranted Risperdal to be of merchantable quality and safe and fit for such use.

37

129.    Plaintiff and her physician reasonably relied upon the skill and judgment of Defendant Janssen as to whether Risperdal was of merchantable quality and safe and fit for its intended use.

130.    Contrary to such implied warranties, Risperdal was not of merchantable quality or safe or fit for its intended use because Risperdal was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

131.    As a direct and proximate result of said breach of warranty, Plaintiff has suffered injuries and damages as described herein.

### COUNT XIV

### CONCEALMENT, SUPPRESSION, OR OMISSION OF MATERIAL FACTS

### (JANSSEN)

132.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 10 and Counts VIII through XIII above as if fully set forth herein.

133.    Defendant Janssen omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Risperdal, including but not limited to, the risks of diabetes mellitus and other injuries.   Further, said Defendant purposely downplayed and understated the serious nature of the risks associated with Risperdal use in order to increase the sales of the drug product.

134.    Defendant Janssen falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality that Risperdal would never have been approved and no reasonable physician would have prescribed these drugs to Plaintiff if they had known about the concealed facts.

135.    Defendant Janssen knew or should have known (or would have known had

38

appropriate testing and/or safety monitoring been done) that use of Risperdal caused serious and potentially life-threatening side effects of diabetes.

136.  Defendant Janssen engaged in calculated silence, despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of the use of Risperdal, and did so because the prospect of significant future profits caused them to ignore concerns regarding health and safety issues, all to the significant detriment of the public, including the Plaintiff.

137.  Safer and less expensive anti-psychotics were available to patients being treated with Risperdal.

138.  Defendant Janssen had a post-manufacturing and continuing duty to warn, which arose when they knew, or with reasonable care should have known, that adverse events associated with Risperdal were serious and sometimes fatal.

139.  Defendant Janssen's actions, as set forth herein, constitute knowing omission, suppression or concealment of material facts, made with the knowledge and intent that doctors and their patients, including Plaintiff, would rely upon such concealment, suppression or omission in connection with the prescribing and use of Risperdal.

140.  In fact, the Plaintiff, directly and/or through Plaintiff's prescribing physician, was induced by Defendant Janssen's omission, suppression and concealment to use Risperdal.

141.  As a direct and proximate result of the conduct of Defendant Janssen as described herein, the Plaintiff has suffered injuries and damages as described herein.

WHEREFORE, Plaintiff Katherine Wiggins demands joint and several relief as to all Defendants as follows:

(a)    General and special compensatory damages in excess of $15,000.00 for personal injury, permanent physical injury, mental anguish, emotional distress, loss of enjoyment of life, and economic loss;

(b)    Interest from January 1, 2003;

(c)    Punitive damages in excess of $15,000.00 against Defendants for their reckless, willful and wanton conduct;

(d)    Attorneys' fees and costs; and

(e)    Such other remedies as this Honorable Court may deem just and appropriate.

DATED this the _26th__ day of May, 2006.


JACOBS & CRUMPLAR, P.A.


By:___ /s/ Robert Jacobs
       Robert Jacobs (244)
       2 East 7th Street
       P.O. Box 1271
       Wilmington, DE 19899
       (302) 656-5445
       Attorney for Plaintiff


40

**EXHIBIT 2**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| KATHERINE WIGGINS, | : | |
| Plaintiff, | : | |
| | : | C.A. No. 06C-05-296 SER |
| v. | : | |
| | : | |
| ASTRAZENECA PHARMACEUTICALS LP, | : | |
| | : | |
| ASTRAZENECA LP, | : | |
| | : | |
| ZENECA, INC., | : | |
| | : | |
| JOHNSON & JOHNSON COMPANY, | : | |
| | : | |
| and | : | |
| | : | |
| JANSSEN PHARMACEUTICA PRODUCTS LP, | : | |
| | : | |
| Defendants. | : | |

## NOTIFICATION OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that a Notice of Removal of the above-captioned action was filed by Defendants Johnson & Johnson and Janssen L.P. in the Office of the Clerk of the United States District Court for the District of Delaware, together with a copy of the Plaintiff's Complaint in this action. The Notice of Removal removes the action from the Superior Court of the State of Delaware in and for New Castle County to the United States District Court for the District of Delaware.

A true copy of said Notice removing this case is attached hereto.

Dated:  June 6, 2006

Respectfully submitted,

David P. Primack (DE 4449)
Drinker Biddle & Reath LLP
1100 North Market Street, Suite 1000
Wilmington, DE 19801-1254
Phone:  302-467-4200
Fax:     302-467-4201

Of Counsel
Kenneth A. Murphy
Drinker Biddle & Reath LLP
18th and Cherry Streets
Philadelphia, PA  19103-6996
Phone: (215) 988-2837
Fax:     (215) 988-2757

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this date, a copy of the foregoing Notice of Removal and

Notification of Filing of Notice of Removal was served, via United States First Class Mail,

postage prepaid upon counsel for the Plaintiff, at the following address:

> Robert Jacobs, Esq.
> 2 East 7th Street
> P.O. Box 1271
> Wilmington, DE  19899

Dated: June 6, 2006

David P. Primack (DE 4449)
Drinker Biddle & Reath LLP
1100 North Market Street, Suite 1000
Wilmington, DE 19801-1254
Phone:  (302) 467-4200
Fax:      (302) 467-4201

℘JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Katherine Wiggins

**(b)** County of Residence of First Listed Plaintiff    Mo.
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See attachment

## DEFENDANTS

Johnson & Johnson; Janssen LP

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

See Attachment

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                            and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability   ☒ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander   ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability   Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine   **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product   ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability   ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability   ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting   ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment   Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/   **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations   ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare   ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment   ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities -   ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original
Proceeding

☒ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1446
Brief description of cause:
Removal - Diversity Jurisdiction

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $
over $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions:)

JUDGE

DOCKET NUMBER  06C-05-296

DATE

6/6/06

SIGNATURE OF ATTORNEY OF RECORD

*David*

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

ATTACHMENT TO CIVIL COVER SHEET

Attorneys for Plaintiff:
Robert Jacobs  at Jacobs & Crumplar, P.A.
2 East 7th Street
P∤θ∤ Box 1271
Wilmington, Delaware 19899
(302) 656-5445

Attorneys for Defendants:
David P. Primack
DRINKER BIDDLE & REATH LLP
1100 North Market Street, Suite 1000
Wilmington, DE 19801-1254
(302) 467-4200

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 6 - 3 7 4 _____

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____|_____ COPIES OF AO FORM 85.

JUN 0 6 2006

_____
(Date forms issued)

_____
(Signature of Party or their Representative)

_____
Poug O'Neill
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action